**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ANDREW D. TARR, individually, and on behalf of others similarly situated,    )<br>    )<br>    )<br>Plaintiff,    )<br>    )<br>v.    )<br>    )<br>BURGER KING CORPORATION, a Florida corporation, d/b/a BURGER KING,    )<br>    )<br>Defendant.    )<br>    )<br>    ) | **CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE**
**FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)**

Plaintiff Andrew D. Tarr ("Plaintiff"), on behalf of himself and others similarly situated individuals, alleges the following upon information and belief and his own personal knowledge.

## I.   NATURE OF THE CASE

1. This action arises from Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended (the "FCRA"), which requires Defendant to truncate certain credit and debit card information on receipts. Despite the clear language of the statute, and having been sued for a virtually identical FACTA violation in the past, Defendant once again willfully, knowingly, or in reckless disregard of the statute, failed to comply with the FCRA. As such, Plaintiff and certain other consumers who conducted business with Defendant during the time frame relevant to this complaint, each of whom paid for goods using a credit or debit card and were entitled to receive a truncated receipt, suffered violations of § 1681c(g). As a result of Defendant's unlawful

conduct, Plaintiff and the Class have been burdened with an elevated risk of identity theft, and are entitled to an award of statutory damages and other relief as further detailed herein.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

3. Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides in this judicial district. This Court has personal jurisdiction over Defendant because Defendant's headquarters and principal place of business are within this district.

## III. PARTIES

4. Plaintiff Andrew D. Tarr ("Plaintiff") is a natural person who, at all times relevant herein, resides in Miami-Dade County, Florida.

5. Defendant, Burger King Corporation ("Burger King"), is a Florida corporation that does business under the fictitious name "Burger King®." Defendant's principal address is 5505 Blue Lagoon Drive, Miami, FL 33126, and its registered agent for service of process is in the state of Florida is CT Corporation System, 1200 S. Pine Island Road, Plantation, FL 33324.

6. As of December 31, 2016, Burger King owns or franchises a total of 15,738 restaurants in more than 100 countries and U.S. territories. Burger King's business generates revenue from three sources: (i) franchise revenues, consisting primarily of royalties based on a percentage of sales reported by franchise restaurants and franchise fees paid by franchisees; (ii) property revenues from properties we lease or sublease to franchisees; and (iii) sales at Company restaurants.[1]

---

[1] Restaurant Brands International Inc., Annual Report (10-K Form) (2017).

7. Burger King is one of the largest fast food restaurant chains in the world, operating more than 7,000 stores in the United States.

8. In 2006, Burger King selected MICROS® as its approved global vendor with respect to point of sale equipment and actively marketed its technology to more than 11,000 Burger King® brand restaurants.[2]

9. In 2008, Burger King announced that it would be utilizing the Oracle-based MICROS® point of sale system in every one of its company-owned restaurants in the United States.[3]

10. Micros System Inc.'s 2012 Form 10-K indeed confirms that "[m]ajor quick service chain restaurant customers (including customers who are franchisees of the chains listed below), include . . . Burger King."[4]

### IV.   FACTUAL ALLEGATIONS

*A. Background of FACTA*

11. Identity theft is a serious issue affecting both consumers and businesses. In 2015, the FTC received over 490,000 consumer complaints about identity theft, representing a 47

---

[2] *Burger King Corporation Selects MICROS as Approved Global Vendor*, PR NEWSWIRE (23 Jan, 2006), http://www.prnewswire.com/news-releases/burger-king-corporation-selects-micros-as-approved-global-vendor-53819752.html.

[3] Burger King Corp. Selects MICROS RES 4.0 for All Company-owned Restaurants in the United States, RESTAURANT NEWS RESOURCE (July, 8 2008) https://www.restaurantnewsresource.com/article33386.html; *see also Oracle Cloud Platform Helps Leading Brands Worldwide Drive Innovation and Business Transformation*, ORACLE (October 27, 2015), https://www.oracle.com/ae/corporate/pressrelease/oracle-cloud-platform-paas-customers-20151027.html.

[4] Mirco System Inc., Annual Report (10-K Form) (2012).

percent increase over the prior year, and the Department of Justice estimates that 17.6 million Americans were victims of identity theft in 2014.[5]

12. Congress enacted FACTA to prevent actual harm. See Pub. L. No. 108-159 (December 4, 2003) ("An Act . . . to prevent identity theft . . . and for other purposes.")

13. "[I]dentity theft is a serious problem, and FACTA is a serious congressional effort to combat it…the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information." *Redman v. Radioshack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014).

14. Upon signing FACTA into law, President George W. Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

15. One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

16. Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> ***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

15 U.S.C. § 1681c(g) (the "Receipt Provision").

---

[5] *FTC Announces Significant Enhancements to IdentityTheft.gov*, *FTC* (Jan. 28, 2016), https://www.ftc.gov/news-events/press-releases/2016/01/ftc-announces-significant-enhancements-identitytheftgov.

17. After enactment, FACTA provided three (3) years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

18. The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ."[6] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

19. Card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[7]

20. Because a handful of large retailers did not comply with their contractual obligations to the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical corrections to the definition of willful noncompliance with respect to violations involving the

---

[6] *Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft*, PR NEWSWIRE (Mar 06, 2003), http://www.prnewswire.com/news-releases/visa-usa-announces-account-truncation-initiative-to-protect-consumers-from-id-theft-74591737.html.

[7] *Rules for Visa Merchants*, VISA (Sept. 1, 2007), http://www.runtogold.com/images/rules_for_visa_merchants.pdf.

printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act.[8]

21. Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number. Instead, it simply provided amnesty for certain past violators up to June 3, 2008.

22. In the interim, card processing companies continued to alert their merchant clients, including Defendants, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.) To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

*See* Visa Alert attached hereto as **Exhibit A**.

23. As noted above, the processing companies have required that credit card or debit card expiration dates not be shown since 2003 and still require it. For example, American Express requires:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

---

[8] *H.R. 4008 (110th): Credit and Debit Card Receipt Clarification Act of 2007*, GOVTRACK, https://www.govtrack.us/congress/bills/110/hr4008/text (last visited June 23, 2017).

*See* **Exhibit B**, attached hereto.

24. Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

*See* **Exhibit C**, attached hereto.

25. According to data from the Federal Trade Commission's 2015 Consumer Sentinel Network Data Book, Florida with its 306,133 complaints ranks No. 1 for the highest per capita rate of reported fraud and other types of complaints. For identity theft, Florida is ranked No. 3 in the country with a total of 44,063 complaints. Also, eight of the top 20 metro areas for identity theft are in Florida, according to the report. First is the Homosassa Springs area with 1290.0 complaints per 100,000 people, and the Miami area counts 482.3 complaints per 100,000 people.[9]

26. So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (http://www.annualcreditreport.com) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

---

[9] *Consumer Sentinel Network Data Book for January-December 2015*, Federal Trade Commission (February 2016), https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2015/160229csn-2015databook.pdf.

27. FACTA expressly and unambiguously prohibits the printing of more than the last five (5) digits of the card number to protect persons from identity theft.

### B. Defendants' Prior Knowledge of FACTA

28. Most of Defendant's business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in compliance with FACTA by consistently verifying their card machines and devices comply with the truncation requirement. Defendant could have readily done the same.

29. Most importantly, Burger King Corporation has been previously sued at least twice for violating the aforementioned federal statute. *See Cowley v. Burger King Corp.*, No. 07-21772-CIV, 2008 WL 8910653, at *1 (S.D. Fla. May 23, 2008); *Magolski v. Burger King Corp.*, No. 11-cv-01041 (E.D. Wis. Filed: November 11, 2011). In the course of one of the previous actions, Burger King conceded that it had knowledge of FACTA's truncation requirements since January 2007. *Cowley*, 2008 WL 8910653, at *4.

30. Not only was Defendant informed not to print more than the last five (5) digits of credit or debit cards, it was contractually prohibited from doing so. Defendant accepts credit cards and debit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

### C. Plaintiff's Factual Allegations

31. On or about April 25, 2017 and May 4, 2017, Plaintiff purchased certain goods from one of Defendant's restaurants located at 18194 Collins Avenue, Sunny Isles Beach, Florida, 33160.

32. Plaintiff was provided with but discarded the receipts for his transactions made on or about April 25, 2017 and May 4, 2017 at Defendant's restaurant.

33. Plaintiff paid for the subject goods using his personal MasterCard[10] debit card and upon information and belief, on each occasion he was presented with an electronically printed receipt bearing the first six (6), along with the last four (4) digits of his debit card account number.

34. Plaintiff is aware that the Burger King restaurant was violating FACTA during the time frame he made the aforementioned purchases between April 25, 2017 and May 4, 2017 due to the complaint previously filed against Burger King for the same violation.[11]

35. In addition to bearing the first six (6), along with the last four (4) digits of his debit card account number, the receipt identifies whether the subject method of payment is a debit card (as opposed to a credit card), as well as the brand of credit or debit card (i.e., Visa, American Express, etc.), the store location, transaction date and time, and name of the cashier.

36. Plaintiff is a regular customer of the Burger King's restaurant located at 18194 Collins Avenue, Sunny Isles, Florida, 33160. Over the years he visited the restaurant numerous times and made multiple purchases because the restaurant is close to Plaintiff's office in Sunny Isles.

37. Before learning about FACTA, Plaintiff discarded numerous Burger King receipts bearing the ten digits of his debit or credit along with the other information identified above, and

---

[10] MasterCard is an "issuer identification blockholder," which means an "entity that owns 2 or more issuer identification numbers. *Issuer Identification Number (IIN)*, ANSI https://www.ansi.org/other_services/registration_programs/IIN?menuid=10 (last visited Oct. 12, 2017); *see also* Allan Smith, *What the numbers on your credit card really mean*, BUSINESS INSIDER (Jul. 29, 2014) http://www.businessinsider.com/credit-card-numbers-meaning-2014-7.

[11] *Gesten v. Burger King Corp.*, Case No. 1:17-cv-22541-RNS (filed on July 7, 2017, S.D. Fla. and alleging that plaintiff received a violative receipt in June 2017).

thus Defendant's actions subjected Plaintiff to a particularly high risk of identity theft. An identity thief can easily exploit the data on his receipts.[12]

38.     The inclusion of the first six digits of Plaintiff's card numbers on his receipts reduced the number of digits an identity thief would need to obtain to have his full card number, thereby reducing the difficulty of guessing or otherwise determining the full card account number.

39.     Defendant's disclosure of the first six card numbers on the receipt creates a risk of harm that disclosing other information, such as the name of the bank that issued the card, does not create. Congress was concerned about wrongdoers deducing the full card account number, and a wrongdoer cannot "reverse engineer" the first six digits from the issuing bank's name because banks commonly issue cards using more than one first-six-digit combination. For example, Bank of America uses nearly 250 different first-six-digit combinations. *See* [www.creditcardvalidator.org/bank-of-america](www.creditcardvalidator.org/bank-of-america) (last visited Oct. 1, 2017).

40.     Assuming a 16 digit credit card number, exposing ten digits, as was done here, means that only six digits need to be guessed, and so there are $10^6$ (ten to the sixth power) possible combinations for an identity thief to guess from. If instead only the five digits permitted

---

[12] "The epidemic of identity theft is growing because sensitive, personal information is acquired very easily, and the issuers of credit are often less than careful in verifying and authenticating the true identity of the applicant. There are many ways that fraudsters obtain data about us--it may be appropriated by, stolen mail, **dumpster-diving**, lost or stolen wallets, shoulder surfing, burglary, friends, relatives (only about 9 percent), **unscrupulous employees**, phone fraud, Internet fraud (phishing and pharming), spyware, hackers, unprotected wireless networks, unethical use of public documents that contain personal information, needless display of the Social Security numbers on government documents (such as; military and Medicare identification cards); the transfer sale and sharing of Social Security numbers and other data among financial institutions, credit reporting agencies and data brokers." Identity Theft and Data Broker Services: S. Hrg. 109-1087 Before the Committee on Commerce, Science, and Transportation, 109th Cong. Sess. 1 (May 10, 2005) (emphasis added).

under FACTA are exposed there are eleven digits that need to be guessed, and similarly $10^{11}$ (ten to the eleventh power) possible combinations of remaining digits, or 100,000,000,000.

41. FACTA's truncation requirements were meant to reduce consumer risks of payment card fraud and identity theft, but Burger King's practices do the opposite by exposing account digits and by empowering criminals to commit effective social-engineering attacks.

### D. Defendants' Misdeeds

42. At all times relevant herein, Defendant was acting by and through its agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

43. At all times relevant herein, the conduct of the Defendant, as well as that of their agents, servants and/or employees, was in willful, knowing, or reckless disregard for federal law and the rights of the Plaintiff.

44. Upon information and belief, the violations at issue have taken place at dozens of Burger King's restaurants.

45. Burger King's method of truncation creates a 100,000-fold increase in the risk that account numbers could be guessed.

46. Most payment card account numbers have 16 digits. Therefore there are in theory more than 10,000 trillion different account number possibilities. FACTA's requirement to truncate at least the first 11 of these digits reduces this universe of theoretical possibilities from 10,000 trillion to 10 billion.

47. However, Burger King's receipt instead of concealing 11 digits, only truncate 6. This cuts the universe of theoretical possibilities from 10 billion to a mere 1 million, rendering

much easier to guess-even if just by brute force-through 1,000,000 different possibilities than through 10 billion.

48. Burger King's failure to truncate does more than merely cause a 100,000-fold increase in the ease of brute-forcing payment card account numbers. It also creates a higher risk of social engineering attacks.

49. Social engineering involves the use of known information to manipulate consumers into revealing private information. For instance, criminals often collect and use specific information in order to deceive consumers into giving up other sensitive personal and financial information.

50. This type of informational fraud is facilitated when the criminals has access to more information so that they can establish the legitimacy of their impersonations and acquire sensitive financial and personal data from innocent consumers.

51. Here, in addition to revealing the last four digits of each payment card account number on receipts, Burger King also reveals the first six. As noted above, the first six digits identify the issuing bank, but many banks have hundreds of identifying numbers such that disclosure of these numbers allows a fraudster to replicate the actual card number, which it cannot do if it just knows the issuing bank.

52. But even just knowing the issuing bank allows a criminal in possession of a Burger King receipt to establish exactly which bank and card brand that customer uses, as well as the date and amount of that customer's purchases.

53. This information, coupled with the ten digits of the customer's card account number, can be used to impersonate that customer's bank (or other legitimate financial

institutions) and convince that customer to communicate further sensitive information, including the remaining six digits of the payment card account number.

54. It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – i.e., immediately upon receipt of a credit or debit card payment.

55. Notwithstanding the fact that it has extensive knowledge of the requirements of FACTA and the dangers imposed upon consumers through its failure to comply, Defendant issued point of sale receipts, which contain the first six (6) and last four (4) digits of credit and debit card account numbers.

56. By shirking FACTA's requirements, Defendant has caused consumers actual harm, not only by uniformly subjecting consumers to an elevated risk of identity theft, but because a portion of the purchase price customers pay is intended to protect consumers' private and sensitive data, including credit or debit card information, as required by both state and federal law.

57. Defendant also invaded Plaintiff's and other putative Class Members' privacy by disclosing their private information to those of Defendant's employees who handled the receipts, as well as other persons who might find the receipts in the trash or elsewhere.

58. To paraphrase the words of the Honorable Judge Posner, Defendants are engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Redman v. RadioShack Corp.*, 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)).

59. A company subject to the FCRA can be liable for willful violations of the FCRA within the meaning of §1681n if they show a "reckless disregard" for the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

## V. CLASS ACTION ALLEGATIONS

60. This action is also brought as a Class Action under Fed. R. Civ. P. 23. Plaintiff proposes the following class, defined as follows, subject to modification by the Court as required:

*(i) All persons in the United States (ii) who, when making payment at one of Burger King Corporation's restaurants across the country (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed more than the last 5 digits of the card number and/or the expiration date of the credit or debit card (vi) within the two (2) years prior to the filing of the complaint.*

61. Plaintiff falls within the class definition and is a member of the class. Excluded from the class is Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family.

### A. *Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.*

62. The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendant.

63. Defendant operates hundreds of restaurants throughout the United States, accepts credit cards and debit cards at each and, upon information and belief, prints receipts reflective of credit card or debit card transactions. Therefore, based upon Defendant's volume of business,[13] it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial

---

[13] Burger King's parent company reports $24 billion in system-wide sales and over 20,000 restaurants in more than 100 countries and U.S. territories as of December 31, 2016. [13] Restaurant Brands International Inc., Annual Report (10-K Form) (2017).

benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendant's records or Defendant's agents' records.

64. There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

65. While all Class members have experienced actual harm as previously explained herein, this suit seeks only statutory damages and injunctive relief on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

66. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the class predominate over questions that may affect individual class members, including the following:

> a. Whether, within the two (2) years prior to the filing of this Complaint, Defendant and/or its agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which more than the last five (5) digits of the card number or the expiration date were displayed;
>
> b. Whether Defendant's conduct was willful such that Defendant is liable for statutory damages;
>
> c. The extent of statutory damages for each such violation; and

      d.      Whether Defendant should be enjoined from engaging in such conduct in the future.

67. As a person that patronized one of Defendant's restaurants and received a printed receipt containing more than the last five (5) digits of his debit card, Plaintiff is asserting claims that are typical of the proposed class. Plaintiff will fairly and adequately represent and protect the interests of the class in that Plaintiff has no interests antagonistic to any member of the class.

68. The principal question is whether Defendant violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendant willfully, knowingly, or recklessly provided such electronically printed receipts, despite knowledge of the unlawful nature of such policy.

69. Plaintiff and the members of the class have all suffered harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the class, along with countless future patrons of Defendant's many restaurants, will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant will continue such illegal conduct. Because of the size of the individual class members' claims, few class members would be incentivized to seek legal redress for the wrongs complained of herein.

70. Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

71. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law.

The interest of class members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

72. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

### COUNT I – VIOLATIONS OF 15 U.S.C. § 1691(c)(g)

73. 15 U.S.C. §1681c(g) states as follows:

*Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

74. This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

75. Defendant employs the use of said Devices for point of sale transactions at the various locations of Defendant.

76. On or before the date on which this complaint was filed, Plaintiff and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

77. At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

78. Notwithstanding the three-year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision; and having knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly, willfully,

intentionally, and/or recklessly violated and continues to violate the FCRA and the Receipt Provision.

79. By printing more than the last five (5) digits of Plaintiff's debit card number on Plaintiff's transaction receipt, Defendant caused Plaintiff to suffer a heightened risk of identity theft.

80. As a result of Defendant's willful violations of the FCRA, Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff, Andrew D. Tarr, respectfully requests that this Court enter judgment in his favor and the class, and against Defendant Burger King Corporation for:

a. An Order granting certification of the Class;

b. Statutory damages;

c. Punitive damages;

d. Injunctive relief;

e. Attorneys' fees, litigation expenses and costs of suit; and

f. Such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.

Dated: October 14, 2017

Respectfully submitted,

By: /s/ *Scott D. Owens*
Scott D. Owens, Esq.                           Bret L. Lusskin, Jr., Esq.
Florida Bar No. 0597651                        Florida Bar No. 28069
SCOTT D. OWENS, P.A.                           BRET LUSSKIN, P.A.
3800 S. Ocean Dr., Ste. 235                    20803 Biscayne Blvd., Ste. 302
Hollywood, FL 33019                            Aventura, FL 33180
Telephone: (954) 589-0588                      Telephone: (954) 454-5841
Facsimile: (954) 337-0666                      Facsimile: (954) 454-5844
scott@scottdowens.com                          blusskin@lusskinlaw.com

Keith J. Keogh, Esq.
KEOGH LAW, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
Keoghlaw.com
Telephone: (312) 726-1092
Facsimile: (312)726-1093
Keith@Keoghlaw.com