UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-23776-CIV-MORENO

ANDREW TARR, individually, and on behalf
of others similarly situated,

      Plaintiff,

vs.

BURGER KING CORPORATION, d/b/a
BURGER KING,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Andrew Tarr filed this putative class action against Burger King for alleged violations of the Fair and Accurate Credit Transactions Act. Burger King subsequently moved to dismiss the case for lack of subject matter jurisdiction. For the reasons discussed below, the Court GRANTS Burger King's motion to dismiss.

### I.    Background

The Fair and Accurate Credit Transactions Act "prohibits merchants from 'print[ing] more than the last five digits of the [credit or debit] card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g)(1). According to Tarr, Burger King "systematically and willfully violated" the Act by printing the "first six and last four digits" of his—and other customers'—credit and debit card account numbers on transaction receipts. He contends that, under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), his allegations establish a particularized and concrete injury in fact.

Burger King filed a motion to dismiss, challenging the Court's subject-matter jurisdiction over this case. It points out that "Tarr does not claim his identity was stolen or that fraudulent

purchases were made using his debit card," adding that he fails to "identify anyone who viewed the discarded receipts." As such, Burger King argues that Tarr lacks standing because his claims under the Act "are based solely on statutory violations divorced from any concrete or actual harm"—*i.e.*, that Tarr has failed to plead the requisite concrete injury in fact.

## II.     Discussion

### A. Motion to Dismiss Standard

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

### B. Article III Standing

Article III of the Constitution endows federal courts with the authority to decide actual "Cases" and "Controversies." U.S. Const. Art. III § 2. "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265 (11th Cir. 2011) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006)). In other words, the doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547. It "serves to prevent the

2

judicial process from being used to usurp the powers of the political branches . . . and confines the federal courts to a properly judicial role." *Id.* (citations and quotations omitted).

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). This case primarily concerns whether Tarr has demonstrated an injury in fact—*i.e.*, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

In *Spokeo*, the Supreme Court recognized the two independent components of an injury in fact—concreteness and particularity—and held that courts must separately assess each component. *See Spokeo*, 136 S. Ct. at 1555. According to the Court, an injury in fact is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* (citation omitted). An injury in fact is concrete if it "exists"—*i.e.*, it is "real, and not abstract." *Id.* ("A concrete injury must be '*de facto*'; that is, it must actually exist.") (citing Black's Law Dictionary 479 (9th ed. 2009)) (quotations omitted).

More specifically, a plaintiff pleads a particularized injury by alleging facts establishing that a defendant "violated *his* statutory rights, not just the rights of other people," and that this violation affected the plaintiff's individualized interests. *Spokeo*, 136 S. Ct. at 1544 (emphasis in original). As the Court explained, "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560).

The Supreme Court in *Spokeo* also discussed whether—and when—a statutory violation may constitute a concrete injury in fact, explaining that the violation of a statutory right, in and of itself, does not create Article III standing to sue. *See Spokeo*, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation."). A plaintiff cannot allege "a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* The Court provided two examples of "bare

3

procedural violations" that would not authorize standing: (i) a consumer reporting agency's failure to notify a user of the agency's information, where that information is completely accurate; or (ii) a consumer reporting agency's dissemination of an incorrect zip code. *See id.* at 1550.

Although these examples of "bare procedural violations" involved intangible injuries, the Supreme Court clarified that "intangible injuries can nevertheless be concrete." *Id.* at 1549. The Court emphasized that Congress's judgment offers instruction about the concreteness of an intangible injury, specifically noting: (i) "Congress is well positioned to identify intangible harms that meet minimum Article III requirements"; and (ii) "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (quoting *Lujan*, 504 U.S. at 580). Thus, "the violation of a procedural right granted by statute"—*i.e.*, by Congress—"can be sufficient in some circumstances to constitute injury in fact." *Id.* According to the Supreme Court, "a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.*

C. **Analysis**

In this case, Tarr has pleaded a particularized injury. He alleges that (i) Burger King "violated *his* statutory rights, not just the rights of other people," and (ii) his "interests in the handling of his credit information are individualized rather than collective." *Spokeo*, 136 S. Ct. at 1544 (emphasis in original). These allegations suffice to establish that the claimed injury affected Tarr "in a personal and individual way." *Id.* at 1549. The issue, however, is whether the alleged statutory violation creates a ***concrete*** injury.

To be sure, Congress enacted the Fair and Accurate Credit Transactions Act to protect consumers from identity theft. *See Guarisma v. Microsoft Corp.*, 209 F. Supp. 3d 1261, 1266 (S.D. Fla. 2016) (citing 149 Cong. Rec. H8122-02 (statement of Rep. Shadegg)). However, the Supreme Court recognized that "Congress's judgment"—albeit instructive—does not dispense with Article III's requirement that Plaintiff establish "a concrete injury even in the context of a

4

statutory violation." *Spokeo*, 136 S. Ct. at 1549. "Congress's role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* In other words, "Congress's judgment that there should be a legal remedy for the violation of a statute does not mean each statutory violation creates an Article III injury." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 2267 (2017) (holding that alleged violations of the Act did not confer standing). Therefore, even assuming Congress intended to create a cause of action for violations of the Act, Tarr still must establish a concrete harm; he cannot "satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo*, 136 S. Ct. at 1549; *see also Gesten v. Burger King Corp.*, No. 17-22541-CIV, 2017 WL 4326101, at *5 (S.D. Fla. Sept. 27, 2017) (holding that the plaintiff lacked standing to sue for a procedural violation of the Act "absent an allegation of actual harm or a material risk of harm").

Tarr fails to satisfy this requirement. He alleges procedural violations, but fails to identify any *real* harm caused by those violations. Tarr specifically claims that, on at least two occasions, he purchased goods at Burger King using his personal MasterCard, and that *"upon information and belief*, . . . [he] was presented with an electronically printed receipt bearing the first six (6), along with the last four (4) digits of his debit card account number." (Compl. ¶ 33.) According to Tarr, "[t]he inclusion of the first six digits of Plaintiff's card numbers on his receipts reduced the number of digits an identity thief would need to obtain to have his full card number, thereby reducing the difficulty of guessing or otherwise determining the full card account number." (Compl. ¶ 37.) As such, Tarr alleges that he has been "subjected [] to a particularly high risk of identity theft." (Compl. ¶ 37-38.)

The case law does not support Tarr's contentions. The Second Circuit and several district courts have held that the exact violation Tarr alleges—printing the first six digits of a credit card account number on a receipt—does not constitute a concrete injury in fact because the first six digits merely identify the institution that issued the card, and are not part of the consumer's

unique account number. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017) (district court did not err in finding that printing the first six digits of a credit card number on a receipt did not result in a "material risk of identity theft absent other allegations of harm"); *Kamal v. J. Crew Grp., Inc.*, No. CV 2:15-0190 (WJM), 2017 WL 2587617, at *3–5 (D.N.J. June 13, 2017) (printing of the first six digits of a credit card number did not increase the risk of future harm since the first six digits relate to the bank or card issuer); *Noble v. Nev. Checker Cab Corp.*, No. 2:15-cv-02322, 2016 WL 4432685, at *2–3 (D. Nev. Aug. 19, 2016) (printing the first digit and last four digits of a credit card number did not constitute a concrete harm).

Additionally, the Seventh and Second Circuits, as well as multiple district courts, have held that under *Spokeo*, a plaintiff who has not suffered any actual harm or material risk of harm lacks standing to sue for violations of the Act. *See Crupar-Weinmann v. Paris Baguette America, Inc.*, 861 F.3d 76, 81–82 (2nd Cir. 2017); *Meyers*, 843 F.3d at 727–29.[1] Nor does a procedural violation of the Act create a material risk of future harm. *See Stelmachers*, 2017 WL 3968871, at *4 ("Identity theft does not become certainly impending through a procedural violation of [the Act].").

To be sure, multiple district courts within the Eleventh Circuit have addressed this issue and all but one reached a different conclusion than the Seventh and Second Circuits. *See, e.g., Guarisma*, 209 F. Supp. 3d at 1268; *Bouton v. Ocean Properties Limited*, No. 16-CV-80502, 2017 WL 4792488, at *32 (S.D. Fla. Oct. 23, 2017); *Altman v. White HouseBlack Mkt., Inc.*, No. 15–cv–2451–SCJ, 2016 WL 3946780, at *4–6 (N.D. Ga. July 13, 2016); *Wood v. J Choo USA*, 201 F.Supp.3d 1332, 1340, 2016 WL 4249953, at *6 (S.D. Fla. 2016). However, *Bouton*,

---

[1] *See also Hendrick v. Aramark Corp.*, No. 16-4069, 2017 WL 1397241 at *4–5 (E.D. Pa. April 18, 2017) (holding that merely alleging an increased risk of identity theft due to the printing of ten digits of credit card account number on receipt was insufficient to establish injury in fact where plaintiff was in possession of the receipt and no one else had seen it); *Paci v. Costco Wholesale Corp.*, No. 16-cv-0094, 2017 WL 1196918, at *3 (N.D. Ill. Mar. 30, 2017) (holding that having to store a receipt in a safe place was insufficient to establish injury in fact where the first six and last four digits of a credit card account number were printed on the receipt); *Stelmachers v. Verifone Sys., Inc.*, No. 5:14-CV-04912-EJD, 2017 WL 3968871, at *3–4 (N.D. Cal. Sept. 7, 2017) (holding that plaintiff did not have standing to sue under the Act where more than five digits of his credit card account were printed on a receipt, but no one other than the plaintiff received a copy of the receipt).

*Altman*, and *Wood* all rely on *Guarisma*; and *Guarisma* relies in part on *Hammer v. Sam's E., Inc.*, 754 F.3d 492 (8th Cir. 2014). *Hammer*—which held that violations of the Act give rise to standing—was abrogated by *Spokio*. *See Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016). Accordingly, courts outside this circuit have disagreed with district courts that rely on *Guarisma* and *Hammer*; they increasingly hold that plaintiffs alleging mere statutory violations of the Act lack Article III standing. *See, e.g.*, *Cruper-Weinmann*, 235 F. Supp. 3d at 576 (Rakoff, J.) (discussing why "there is reason to question" the courts' reasoning in *Guarisma*, *Bouton*, *Altman*, and *Wood*).

Finally, because Tarr's Complaint alleges only bare procedural violations divorced from any concrete harm or material risk of harm, it typifies the abusive lawsuits brought under the Act that prompted Congress to enact the Credit and Debit Card Receipt Clarification Act of 2007. Pub. L. 110-241 § 2(a)(4), H.R. 4008, 110th Cong. (2008), codified at 15 U.S.C. § 1681n(d). Congress stated that "[t]he purpose of [the Clarification] Act is to ensure that consumers suffering from any **actual harm** to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id.* at 2(b) (emphasis added). Although the Clarification Act operated only as a retroactive safe harbor, "Congress's stated purpose in passing the Clarification Act does shed light on the proper interpretation of [the Fair and Accurate Credit Transaction Act]." *Gesten*, 2017 WL 4326101, at *5. Specifically, it illustrates Congress's intent that lawsuits brought under the Act "seek to remedy actual harm" and "does not evince an intent to create a *de facto* concrete injury in every instance in which [the Act] is violated." *Id.*; *see also Meyers*, 843 F.3d at 728 (finding that Congress was "quite concerned with the abuse of FACTA lawsuits" and, therefore "sought to limit FACTA lawsuits to consumers suffering from any actual harm"); *Crupar-Weinmann*, 861 F.3d at 81 (calling the Clarification Act's findings "dispositive").

### III. Conclusion

Tarr's allegations fail to connect the alleged statutory violations with any concrete injury. His Complaint indicates that he suffered no harm from Burger King's failure to truncate the first six digits of his credit card account number on his receipt. And Tarr has not alleged facts suggesting Burger King's violation created an appreciable risk of harm. Consequently, he has failed to establish a concrete injury in fact sufficient to confer standing. Because Tarr lacks standing, the Court lacks subject-matter jurisdiction over this case. Accordingly, it is **ADJUDGED** that Burger King's motion to dismiss is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 5 of January 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record